[No. G000351. Fourth Dist., Div. Three. Jan. 22, 1985.]

M. E. GRAY CO., Plaintiff, Cross-defendant and Respondent, v.
LAURENCE S. GRAY et al.,
Defendants, Cross-complainants and Appellants;
METAL FABRICATION SERVICE, INC., et al.,
Defendants, Cross-complainants and Respondents.

COUNSEL

Bewley, Lassleben & Miller, Kevin P. Duthoy and Joseph Viatieri for Defendants, Cross-complainants and Appellants.

Hill, Wynne, Troop & Meisinger, Louis M. Meisinger and C. Dennis Loomis for Plaintiff, Cross-defendant and Respondent.

Grace, Neumeyer & Otto, Ronald J. Skocypec, David Belofsky, Wise & Nelson and John W. Nelson for Defendants, Cross-complainants and Respondents.

OPINION

**SONENSHINE, J.**—Sanctions were assessed against a law firm for the frivolous filing of a motion to dismiss under Code of Civil Procedure section 583, subdivision (b). The trial court found the motion was "totally without legal merit or factual support," and was filed in bad faith. The sanctioned law firm contends the motion was brought upon its reasonable belief the five-year period had expired when plaintiff failed to file a written waiver ordered by the court as a condition for continuance of trial.

The underlying litigation commenced on April 5, 1978, when a complaint for unfair competition, breach of fiduciary duty and interference with contractual relations was filed on behalf of plaintiff M. E. Gray Co. Named as defendants were Laurence S. Gray, Ronald R. Majerick, G. C. Gloster, Gordon S. Halliday, Metal Fabrication Service, Western Fabrication Co., Inc., and Gray Pipe & Supply, Inc. On May 24, 1978, the law firm of Bewley, Lassleben & Miller (the Bewley firm) filed a cross-complaint on behalf of all defendants for breach of contract and injunctive relief against M. E. Gray Co. and Jenkins Bros. Trial was scheduled for December 6, 1982.

On December 2, 1982, Richard L. Dewberry of the Bewley firm moved for a continuance of the trial to a date in September 1983 claiming additional

time was needed to depose expert witnesses. One month earlier the law firm of Grace, Neumeyer & Otto, Inc. (the Grace firm) had been associated as counsel for defendant Metal Fabrication Service, Inc. The Grace firm joined in the motion, claiming it needed more time to prepare for trial.[1] The court, over plaintiff's objection, granted the continuance and directed counsel to proceed to master calendar to select a new trial date. Recognizing a trial date later than April 5, 1983, would subject plaintiff to a dismissal of its lawsuit under Code of Civil Procedure section 583, subdivision (b),[2] the court stated: "So my feeling would be that I would like to go ahead and indicate that an extension of the statute, the five-year statute, should be— written extension by all defendants should be in the file by—extended until December the 6th of 1983; . . ."

A few days later notice of the ruling was served by Mr. Dewberry. The notice also indicated trial had been continued to September 26, 1983.

On March 15, 1983, Mr. Dewberry, on behalf of all defendants and cross-complainants, forwarded an original document entitled "Stipulation Extending Time For Trial [C.C.P. § 583(b)]" to plaintiff's attorney. Copies were sent to the Grace firm and to counsel for cross-defendants. The cover letter requested plaintiff's attorney to circulate the stipulation to the others for their signatures and to return it to Mr. Dewberry, who would then cause the original to be filed with the court. As of April 5, 1983, the stipulation had not been returned.

On April 11, 1983, the Bewley and Grace firms applied for an order shortening time to set a motion to dismiss under section 583, subdivision (b). The Bewley firm also sought an order shortening time to specially set a trial date on the cross-complaint, on which the five years would run May 24, 1983. The court granted the request and set the hearing on the motions to dismiss and to specially set a trial date for April 28, 1983. Within the

---

[1]Mr. Dewberry appeared at the hearing on behalf of all defendants (except Metal Fabrication Service) and cross-complainants. Some time between December 2, 1982 and April 12, 1983, the law firm of Wise & Nelson appeared in the case for defendant Gordon S. Halliday, and the firm of Kirtland & Packard became attorneys of record for defendants Laurence S. Gray and Ronald Majerick. Subsequent to April 28, 1983, the firm of Pachter, Gold & Schaffer was substituted into the case on behalf of defendant Ronald Majerick. The Bewley firm, however, continued to represent all of the defendants in their capacity as cross-complainants.

[2]Section 583, subdivision (b) provides: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended."

All further statutory references are to the Code of Civil Procedure.

next few days the firm of Wise & Nelson (the Wise firm), counsel for defendant Gordon S. Halliday, filed its own motion to dismiss, and the firm of Kirtland & Packard, counsel for defendants Lawrence S. Gray and Ronald R. Majerick, filed a request to join in the motion. Plaintiff was given until April 27, 1983, to file its opposition.

Shortly before the close of business on April 27, 1983, plaintiff served its opposition to the motion to dismiss on the Bewley firm. Included was a request for sanctions in a sum not less than $2,950 against the moving parties and their respective attorneys, jointly and severally, pursuant to section 128.5.[3]

At the hearing on April 28, 1983, the court denied the motion to dismiss and the motion to specially set the cross-complaint for trial. However, it granted plaintiff's request for sanctions in the amount of $2,950, but against the Bewley firm only. An order prepared by plaintiff's counsel was filed May 5, 1983.[4]

---

[3]Section 128.5 provides: "(a) Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith. (b) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

[4]The order included, in part, the following findings: "[T]he Motion to Dismiss Complaint . . . [was] frivolous and made in bad faith, and [was] the product of tactics and actions undertaken in bad faith. Specifically, the Court finds the following facts to exist and to warrant imposition upon Bewley, Lassleben & Miller of an order to pay plaintiff . . . reasonable expenses in opposing the subject motion[] pursuant to Code of Civil Procedure Section 128.5:

"(a) Bewley, Lassleben & Miller, by Richard L. Dewberry, at that time counsel of record for all defendants . . ., and acting on their behalf, . . . manifested an unequivocal and unconditional intention to extend the five year period specified by C.C.P. § 583(b) as it affects . . . the Complaint . . . in this action, by moving on December 2, 1982, for an order continuing the then-scheduled trial date of December 6, 1982, to a date in September 1983 which all parties were aware was beyond the five-year period . . .;

"(b) This Court conditioned the trial continuance granted to defendants . . . on December 2, 1982, upon the filing by defendants of a written extension of the five-year period, and defendants were, as of the time of making the Motion to Dismiss, under a continuing obligation to comply with that Court Order;

"(c) There was no obligation imposed by law, or by this Court's Order, or by any agreement among the respective parties, that the written extension of the five-year period was required to be filed with the Court on or before April 5, 1983;

"(d) It was the primary obligation of defendants, in compliance with the Court's Order of December 2, 1982, to cause the written extension of the five-year period to be prepared, signed and filed with the Court with reasonable promptness, and Bewley, Lassleben & Miller did not properly discharge this obligation of defendants in that they failed to prepare and circulate the written stipulation for extension until March 15, 1983 and thereafter made no

On May 9, 1983, the Bewley firm filed a motion for reconsideration. The hearing was originally scheduled for June 16, 1983. However, counsel agreed to a continuance to August 18 and Mr. Dewberry advised the court by telephone. Nonetheless, on June 16 the court made its minute order denying the motion as well as what it apparently construed as a "request" for continuance.

■ ■■■■ The Bewley firm appeals that portion of the May 5, 1983, order imposing sanctions and the order of June 16, 1983, denying its motion for reconsideration.[5]

## I.

■ The Bewley firm first contends plaintiff's "eleventh hour" notice of its intention to request sanctions failed to satisfy due process requirements. Relying on *Ellis* v. *Roshei Corp., supra,* 143 Cal.App.3d 642, it argues the provisions of section 1005 should control. We disagree.

In *Ellis,* sanctions were sought against the defendant or his counsel for the frivolous filing of a demurrer. The request was included in the plaintiff's opposition papers served *five* days before the scheduled hearing. After taking the matter under submission, the trial court overruled the demurrer and

---

attempt to follow up upon the status or whereabouts of the written stipulation at any time prior to filing the Motion to Dismiss; and

"(e) The Motion to Dismiss . . . [was] totally without legal merit or factual support, and [was] filed by Bewley, Lassleben & Miller on behalf of defendants . . . in bad faith, manifesting a total lack of candor and utilizing tactics of unfair surprise for the purpose of annoying and embarrassing plaintiff . . . and causing [it] unnecessary delay and expense in opposing the Motion. Evidence of Bewley, Lassleben & Miller's lack of candor and tactics of unfair surprise includes their conduct in attending the deposition noticed by defendants of plaintiff's expert witness on April 7, 1983, and in discussing a voluntary dismissal as to one individual defendant with counsel for plaintiff on April 8, 1983, without making any inquiry whatsoever on either of those occasions concerning the whereabouts or status of the written stipulation for extension, or advising counsel for plaintiff . . . that as of that time, defendants contended that the five-year period had expired by reason of the written stipulation for extension not previously having been filed with the Court, and then, on April 11, 1983, without any further discussion or warning to opposing counsel, filing the subject Motion."

[5]An order imposing sanctions is appealable as a final order on a collateral matter directing the payment of money. (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 3 [192 Cal.Rptr. 57].) An order denying a motion for reconsideration is appealable if the original ruling is appealable in its own right. (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1010 [183 Cal.Rptr. 594].) However, "[e]ven though the original ruling was embodied in an appealable order, an order denying reconsideration may still not be appealable if the reconsideration motion was based on exactly the same showing offered in support of the original application. [Citations omitted.]" (*Id.,* at p. 1011.) Although the Bewley firm's motion did not set forth a different state of facts to warrant consideration, the thrust of its attack relates to the trial court's failure to hear argument. Thus, we deem it appealable.

imposed sanctions of $250 against the plaintiff's attorney. A motion for reconsideration was denied. The attorney contended on appeal he had inadequate notice and opportunity to be heard.

The appellate court stated: "Section 128.5 specifically provides that notice may be contained in a party's responding papers as was done in the instant case. Section 1005 provides: 'All papers opposing a motion so noticed shall be filed with the court and served on each party at least five days before the time appointed for the hearing.'" (At p. 647.) Its discussion of the notice requirement continued in a footnote: "[I]t would appear that for purposes of requesting sanctions under section 128.5 the five-day response time of section 1005 would be jurisdictional to the due process requirements discussed in *Bauguess* [v. *Paine* (1978) 22 Cal.3d 626 (150 Cal.Rptr. 461, 586 P.2d 942)]. Further, we do not mean to say that five days will be, in all instances, sufficient time to allow the party, against whom sanctions are requested, to answer to prepare for the hearing on the granting of sanctions. The trial court has the inherent power and the right to control its own proceedings to allow such additional time as, in its discretion, it deems necessary to insure a fair hearing on the request for sanctions." (*Id.,* at p. 647, fn. 5.)

However, the *Ellis* court refrained from deciding the issue of "whether the minimum time requirement of five days set forth in section 1005 is sufficient to impose sanctions under section 128.5 because . . . [the attorney] was given a second opportunity to contest the sanctions on his motion to reconsider." (*Id.,* at pp. 647-648.)[6] Moreover, its discussion of a five-day notice requirement cannot be construed as a holding five days' notice is essential in all cases. Rather, under the facts of *that* case, the court noted a period of five days was jurisdictional since the response was due five days before the hearing.

In view of section 128.5's specific provision that notice of a request for sanctions may be contained in a party's responding papers, where the time for filing a response is jurisdictional a request for sanctions should be deemed timely if included in the response. In our case the motion to dismiss was set on shortened notice, and the court gave plaintiff until the day before

[6]In view of our conclusion we need not consider plaintiff's contention that, even if the Bewley firm was not afforded adequate notice, it was given a second opportunity to contest the sanctions in its motion to reconsider. In *Ellis* the issue of sanctions was not addressed at the initial hearing. The trial court had taken the matter under submission and rendered its ruling by minute order. Here, Mr. Dewberry had knowledge of the award at the April 28th hearing and had an opportunity to respond. Thus, in *Ellis* a finding the appellant had a "second opportunity" to be heard was essential to satisfy section 128.5's due process requirements. That is not the case here.

the hearing to file opposition. Consequently, the one-day notice would appear to be sufficient.

However, our rejection of the Bewley firm's argument need not depend upon the adequacy of the one-day notice because the Bewley firm nevertheless was given an opportunity to be heard. After the court announced its decision to assess sanctions, the following colloquy took place:

"Mr. Dewberry: On behalf of Bewley, Lassleben & Miller, this motion was required out of an obligation to our client, and that furthermore, had I failed to make this motion, I would be derelict in my duty to my client.

"The Court: Fine. Anything else?

"Mr. Dewberry: No, your honor."

In failing to raise the issue of inadequate notice, Mr. Dewberry waived any objection he may have had upon that ground. (*Tate* v. *Superior Court* (1975) 45 Cal.App.3d 925, 930-931 [119 Cal.Rptr. 835].) And although his motion for reconsideration challenged the sufficiency of the notice, he failed to explain how he was prejudiced. Furthermore, while the Bewley firm could not necessarily have anticipated plaintiff's response would also include a request for sanctions, Mr. Dewberry should not be heard to complain since he created the situation by requesting an early hearing date.[7]

## II.

■ Underlying the Bewley firm's second contention, that its motion to dismiss was not frivolous, is the question of whether April 5, 1983—the five-year anniversary of the filing of the complaint—was the last day for filing the waiver. The Bewley firm claims its interpretation of the court's December 2d ruling was made in good faith and it reasonably believed an advantage had been afforded to its clients by plaintiff's failure to execute and file the written waiver prior to the expiration of the five-year period. We cannot agree.

■ "[A] motion is frivolous and in bad faith where . . . any reasonable attorney would agree such motion is totally devoid of merit. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508,

[7]The Bewley firm applied for an order shortening time to avoid the unnecessary expense of discovery which would otherwise have proceeded in the interim. Had it more appropriately first sought a stipulation that all discovery would cease pending the outcome of the motion, it is likely the issue of notice would not now be before us.

646 P.2d 179].)" (*Karwasky* v. *Zachay* (1983) 146 Cal.App.3d 679, 681 [192 Cal.Rptr. 292].)

At the April 28th hearing the court indicated its disbelief with respect to the motion to dismiss: "Mr. Dewberry, I read your moving papers. I was truly amazed at what I read, and so I reread them. I read everything else and then I read everything else again. But, you know, the orders are incredible. . . . What the hell are you doing? This is truly incredible. Everybody knows that waiver doesn't have to be filed within the five years. Everybody is with the September program. What are you doing?"

Mr. Dewberry responded: "Basically, it's our belief or my belief alone that the plaintiff's inadvertence in filing [the stipulation] and returning it by April 5th for filing has in effect given my client a windfall on a substantive right."

A number of factors compel us to conclude the trial court properly characterized the motion filed by the Bewley firm as a "product of tactics and actions undertaken in bad faith."

First, it found defendants were "under a continuing obligation to comply" with the dictates of the December 2d ruling.[8] The Bewley firm failed to discharge its obligation to timely file the waiver by waiting until March 15, 1983—more than three months after the December 2d hearing—to circulate it to opposing counsel. And it made no effort to follow up on the status of the stipulation during the 27 days which elapsed before it filed the motion to dismiss. In fact, at an April 7, 1983, deposition of plaintiff's expert witness, Mr. Dewberry neither inquired of opposing counsel as to the whereabouts of the stipulation nor mentioned the Bewley firm's position the five-year period had already expired.

Moreover, there is no indication the order granting defendants' motion for continuance was conditioned upon the filing of a written extension by any specific date, much less on or before April 5, 1983, and the trial court so found. The Bewley firm's motion to continue the December 6th trial date itself "manifested an unequivocal and unconditional intention to extend the five year period." Since the filing of a written extension of the five-year period was not essential under these facts, we view the court's order as intending only to implement section 583's requirement of a written stipulation. "The reason behind the requirement for a written stipulation was

---

[8]And at the conclusion of the April 28th hearing the court ordered all counsel who had not yet signed the stipulation to do so. It was filed the same day. However, the record discloses the Grace firm did not sign it. (See fn. 10, *post.*)

first explained in *Miller & Lux, Inc.* v. *Superior Court,* 192 Cal. 333, 340 [219 P. 1006]: 'The provision [§ 583] that a written stipulation be entered into was intended to preclude all disputes, . . . by a requirement that clear and uncontrovertible evidence be presented to the court that the statutory time was *deliberately* intended to be extended by both parties.' (Italics added.)'' (*Taylor* v. *Shultz* (1978) 78 Cal.App.3d 192, 196 [144 Cal.Rptr. 114].)

And even if we were to construe the court's order as *requiring* a signed stipulation, it was *defendants* who were ordered to do so. Citing *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 806 [137 Cal.Rptr. 434], the Bewley firm contends it was *plaintiff's* duty to obtain a waiver. This *is* generally true, as it is a plaintiff's burden to see that his or her lawsuit is brought to trial within five years of its commencement. However, this proposition can hardly be deemed applicable where a plaintiff who is ready, willing and able to proceed to trial within five years, is ordered to acquiesce to a defendant's request for a continuance. Consequently, there is no merit to the premise underlying the Bewley firm's contention. A *plaintiff* whose trial date has been continued on a *defendant's* motion beyond the five-year period, should not suffer mandatory dismissal because the *defendant* failed to comply with an order requiring the filing of a stipulation.

Nor are we persuaded by the Bewley firm's contention it had the right to rely on the fact no one objected to the contents of the notice of continuance prepared and served by Mr. Dewberry. The notice stated, in part: ''The Court further ordered that each of the parties to this action, including plaintiffs, defendants, cross-complainants and cross-defendants, are to file written waivers of the 'five-year rule' extending the time for trial in this action including related actions until December 2, 1983.'' But the notice merely stated a written waiver was to be filed. It set forth no time limit and it made no reference to the filing of a waiver as a *condition* either for the continuance or for proceeding with trial in September 1983.

### III.

■ The Bewley firm's next contention, that the trial court's treatment of its motion for reconsideration was an abuse of procedure and a denial of its right to be heard, is also meritless.

Mr. Dewberry did not appear in court to request a continuance. The record discloses he advised the court clerk of the stipulation by telephone,

and the transcript of the June 16, 1983 calendar call indicates the motion *was* continued to August 18, 1983.[9]

Nonetheless, it must be presumed the court considered the moving papers and decided not to modify the sanctions award. ■ "A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error. [Citations omitted.]" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4225 (italics in original); see also, *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

■ Furthermore, "[w]hile a court has the discretion to receive oral testimony, it may refuse to do so and may properly rule solely on the basis of affidavits. (*Crocker-Citizens Nat. Bank* v. *Knapp* (1967) 251 Cal.App.2d 875, 880 [60 Cal.Rptr. 66]; *Muller* v. *Muller* (1956) 141 Cal.App.2d 722, 731 [297 P.2d 789].)" (*McClellan* v. *McClellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258].)

■ Notwithstanding, even if we were to conclude the court erred in denying the motion for reconsideration without affording the Bewley firm an opportunity to present oral argument, any error would have been harmless. Our review of the record discloses the Bewley firm's moving papers do not set forth a different state of facts to warrant reconsideration, as required by section 1008. They merely assert Mr. Dewberry's position he was not given adequate notice and an opportunity to be heard. And we have already concluded he *was* afforded that opportunity. More importantly, the Bewley firm on appeal fails to state what evidence or argument not raised in its moving papers would have been asserted at argument.

## IV.

■ We now turn to the Bewley firm's contention any award of sanctions should have been apportioned among all counsel who had joined in the motion to dismiss. Plaintiff has taken no position on this issue.

However, the Grace and Wise firms have jointly filed a respondent's brief in which they claim the Bewley firm lacks standing to seek such relief. Their argument is based upon the rule only an aggrieved party may appeal. (*Win-*

---

[9]We of course have no way of knowing why the trial judge then denied the motion *and* the "request" for a continuance. In any event, although stipulated requests for continuances are frequently entertained by telephone it may have been appropriate for the Bewley firm to send a representative to court to confirm an oral continuance of its own motion.

*ter* v. *Gnaizda* (1979) 90 Cal.App.3d 750, 754 [152 Cal.Rptr. 700]; see also, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 118, p. 4117.) Generally, a defendant who is individually liable is not aggrieved by the exoneration of a codefendant, even where a potential right of contribution exists. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 120, p. 4118; see also, *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 608 [94 Cal.Rptr. 200]; *Cook* v. *Superior Court* (1969) 274 Cal.App.2d 675, 679 [79 Cal.Rptr. 285].) In the context of our case we view the Bewley firm and the other law firms as "codefendants."

But our determination does not end here. In *Cavallero* v. *Michelin Tire Corp.* (1979) 96 Cal.App.3d 95 [157 Cal.Rptr. 602], the court rejected the plaintiff's argument Michelin did not have standing to assert any error in the verdict exonerating another defendant, Radial. Distinguishing *Diamond Springs* and *Cook,* it found Michelin was not attempting to appeal from the verdict exonerating Radial. Rather, Michelin had asserted an *inconsistency* in the verdicts because the basis for liability and the facts with respect to the claimed defect were the same as to each defendant.

Viewing the Bewley firm's argument in that light and applying the principle enunciated in *Cavallero,* we conclude while the basis for plaintiff's request for sanctions may have been the same as to all of the law firms, the *facts* with respect to each were *not*.

For example, the Wise firm did not represent Mr. Halliday at the December 2, 1982, hearing. Although the record does not disclose when the firm appeared in the case, it did file its own motion to dismiss on April 12, 1983, which incorporated a declaration of Mr. Dewberry. However, it was not a signatory to the stipulation extending time. Thus, a different set of facts exists to determine the Wise firm's motives in filing the motion. The same reasoning would apply to the other law firms whose representation of individual defendants did not commence until after the December 2d hearing.

At the April 28th hearing the court initially indicated its intention to assess sanctions against all counsel. However, upon the representation of a member of the Wise firm that he became attorney of record after the five years had run, the court said: "The sanctions will be paid by Bewley." Mr. Dewberry did not object to the court's unwillingness to apportion the sanctions nor did he attempt to refute the court's finding the Bewley firm alone was responsible. He could have reminded the court the Grace firm appeared at the December 2d hearing on behalf of Metal Fabrication Service and that it was named as a signatory on the stipulation.[10] He did not.

---

[10]However, the stipulation indicated the Bewley firm was attorneys for all defendants *including* Metal Fabrication Service. This perhaps explains why the Grace firm did not ultimately sign the stipulation at the April 28th hearing.

Although we think the trial court would have been correct had it charged the Grace firm with a portion of the $2,950, this does not alter the fact the sanctions imposed on the Bewley firm were based on a separate and distinct set of circumstances.[11] Consequently, the Bewley firm has no standing to complain.

## V.

██ Finally, in their response to the Bewley firm's opening brief, plaintiff and the Grace and Wise firms argued the appeal was itself frivolous and warranted an imposition of sanctions pursuant to California Rules of Court, rule 26(a).[12] Accordingly, we notified the parties a hearing on this issue would take place simultaneously with oral argument. (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 654.)

The Bewley firm did not address the issue of sanctions in its reply brief. However, at the hearing counsel[13] objected to the imposition of sanctions, claiming both the motion to dismiss and the appeal were brought in good faith.[14] ██ But whether *the Bewley firm* acted in the honest belief it had grounds for appeal is *not* the determinative factor. Rather, the test is "whether any reasonable person would have held that opinion and not concluded that the point was totally and completely devoid of merit and therefore frivolous." (*Corona* v. *Lundigan* (1984) 158 Cal.App.3d 764, 768 [204 Cal.Rptr. 846]; see also, *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 650.) ██ Applying this standard we find the appeal undisputably has no merit. And in compliance with *In re Marriage of Flaherty, supra,* at page 654, we set forth the circumstances justifying our conclusion.

At the April 28th hearing Mr. Dewberry was given an opportunity to be heard. In failing to raise the issue of the sufficiency of plaintiff's notice of its request for sanctions, he waived any objection he may have had. Then, after sanctions were imposed, he failed to challenge the court's refusal to apportion the award among the other law firms. And not only did the motion for reconsideration fail to state different facts upon which reconsideration

---

[11]For example, see footnote 4, *ante,* items (d) and (e).

[12]Rule 26(a) provides, in pertinent part, as follows: "Where the appeal is frivolous or taken solely for the purpose of delay . . ., the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

[13]Neither Mr. Dewberry nor Mr. Duthoy, the attorney who had prepared the briefs, was present. The attorney appearing for the Bewley firm informed us he could not account for Mr. Dewberry's absence.

[14]Since he had not been involved personally with either the motion to dismiss or the perfecting of the appeal, his efforts to so persuade us were admittedly unconvincing.

could be granted, but also, the Bewley firm on appeal failed to state what different facts would have been alleged had there been a hearing.

 Lastly, with respect to the Bewley firm's contention its motion to dismiss was not frivolous, our discussion of this issue, *supra,* speaks for itself.[15]

We are mindful of *Flaherty*'s directive that in considering an award of sanctions "the punishment should be used most sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 651.) "However, the other end of the scale is to ensure that indefensible conduct does not occur. Abuse of the system subjects attorneys to needless and taxing hours of labor, and their clients to additional unwarranted expense and delay." (*Corona* v. *Lundigan, supra,* 158 Cal.App.3d 764, 768.)

 This case exemplifies the adage a person (or, as here, a law firm) should "leave well enough alone." The conduct of Mr. Dewberry on behalf of the Bewley firm was reprehensible, and the trial court exercised its discretion soundly in assessing sanctions. Of course, affirmance of that penalty does not in itself justify further sanctions. And we recognize that, in order to avoid a chilling effect on the assertion of litigants' rights, "[c]ounsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 650.) However, the Bewley firm's decision to pursue an appeal not only exacerbated an already appalling situation, but also, it exhibited a flagrant disregard for the law firm's obligation "'to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice.'" (*Id.,* at p. 647, citing *Kirsh* v. *Duryea* (1978) 21 Cal.3d 303, 309 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].) This abuse of the appellate process, in our opinion, satisfies *Flaherty*'s fiat as to the parameters within which punishment may be imposed.

---

[15]While we conclude not one of the issues raised on appeal has any merit, "[s]anctions for an appeal which is partially frivolous are appropriate if the frivolous claims are a *significant* and *material* part of the appeal." (*Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1010 [205 Cal.Rptr. 532]; italics in original.) In *Maple Properties* the appellant argued its appeal from an order dismissing its complaint was not frivolous because there were *some* viable causes of action. Rejecting that contention the court said: "Appellant's argument could be carried to an illogical extreme. If an appeal consists of 100 causes of action and 99 of said actions were frivolous, then the appeal could not be *totally* frivolous because one cause of action had merit. Therefore, we must look to the entire character of the appeal to determine whether the frivolous aspects are significant and material such as to warrant sanctions because the appeal was partially frivolous." (*Ibid.,* fn. 12; italics in original.) Here, the thrust of the Bewley firm's appeal related to the trial court's finding the motion to dismiss was frivolous. Consequently, even if there were a scintilla of merit to any of its other arguments, an award of sanctions on appeal would still be warranted.

After considering the undue burden this appeal has placed on the legal system and the consumption of this court's time (*Custom Craft Carpets, Inc.* v. *Miller* (1982) 137 Cal.App.3d 120, 125 [187 Cal.Rptr. 78]), we have determined a sanction against the Bewley firm in the form of a penalty in the sum of $8,850[16] is appropriate. Fundamental to our decision is the specific purpose to be served in discouraging like conduct in the future. (*Kapelus* v. *Newport Equity Funds, Inc.* (1983) 147 Cal.App.3d 1, 9 [194 Cal.Rptr. 893].) Although sanctions were requested by plaintiff *and* respondents Metal Fabrication Service and Gordon Halliday, we refuse to allow these respondents to benefit from their participation in the underlying motion to dismiss.

The orders are affirmed in all respects. The Bewley firm shall pay to plaintiff the sum of $8,850. In addition to the award of sanctions, plaintiff as well as the other respondents are entitled to costs on appeal.

Trotter, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied February 13, 1985.

---

[16]At argument plaintiff's counsel suggested an appropriate amount would be not less than three times plaintiff's expense in opposing the motion to dismiss, i.e., three times $2,950, or $8,850.